UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Enma Duarte**, | |
| Plaintiff | JURY TRIAL DEMANDED |
| v. | |
| **Aguaviva of Alexandria, Inc.** d/b/a Don Taco | Case No.: |
| a Virginia corporation, | |
| Serve: Herbert S. Rosenblum, a Professional Corporation Registered Agent 526 King Street, Ste. 211 Alexandria, VA 22314 | |
| and **Miguel A. Cordero**, | |
| Defendants | |

## COMPLAINT

### Preliminary Statement

1.      Plaintiff Enma Duarte brings this suit against her former employers—Aguaviva of Alexandria, Inc. (d/b/a "Don Taco"), and its president, Miguel A. Cordero—for failure to pay overtime premiums in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219.

2.      From 2018 through early 2020, Ms. Duarte worked over 40 hours nearly every week, but Defendants did not pay her overtime as required by federal law. Moreover,

1

Defendants systematically underreported Ms. Duarte's hours on her paystubs in a way that strongly suggests that they were underpaying her intentionally and trying to hide it.

## Jurisdiction and Venue

3. This action arises under the federal Fair Labor Standards Act ("FLSA"). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b) (private right of action).

4. This Court has personal jurisdiction over Defendant Don Taco because (1) the company is a Virginia corporation that has its principal place of business in Virginia; (2) the company transacts business in Virginia; and (3) as Ms. Duarte's joint employer, the company's acts and omissions in Virginia gave rise to the wage violations that form the basis of this complaint.

5. This Court has personal jurisdiction over Defendant Miguel A. Cordero because (1) he is the president of Don Taco and came to the restaurant regularly during Plaintiff's employment there; and (2) as Plaintiff's joint employer, his acts and omissions in Virginia gave rise to the wage violations that form the basis of this complaint; and (3) upon information and belief, he resides in Virginia.

6. Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the City of Alexandria. *See* 28 U.S.C. § 1391(b)(2); 28 U.S.C. § 127(a); and Local Civil Rule 3.

## **PARTIES**

7. Plaintiff Enma Duarte is an adult resident of Virginia.

8. Defendant Aguaviva of Alexandria, Inc. is a Virginia corporation doing business under the name "Don Taco." It is located in the City of Alexandria at 808 King Street, Alexandria, VA 22314.

9. On information and belief, Don Taco had over $500,000 in gross annual sales at all relevant times.

10. On information and belief, at all relevant times, Don Taco had at least two employees who handled goods that had been moved in interstate commerce.

11. Defendant Miguel A. Cordero is the president of Don Taco. On information and belief, he is an adult resident of Virginia. Defendant Cordero is also president of MACNAC Management, Inc., a Virginia corporation that operates as a restaurant group. The MACNAC group comprises Don Taco and at least four other Northern Virginia restaurants.

## FACTS

### Ms. Duarte's Employment

12. Ms. Duarte worked at Don Taco from about late 2012 or early 2013 to about March 13, 2021. She did not hold any other jobs during this time.

13. Defendant Cordero hired Ms. Duarte to work at Don Taco in or around late 2012 or early 2013. Defendant Cordero determined or approved Ms. Duarte's initial pay rate, schedule, and job duties.

14. Ms. Duarte was hired at an hourly rate of about $11 per hour. Ms. Duarte received several raises over the following years. By around early 2018, she was earning $13.50 per hour. And in late July 2018, she got a raise to $14 per hour.

15. In early 2020, Defendants cut Ms. Duarte's pay from $14 per hour to $12 per hour. Ms. Duarte called Defendant Cordero to complain about the pay cut. Defendant Cordero

said that he had cut many workers' wages to $11 per hour due to the COVID-19 pandemic, but that he had only cut her wages to $12 because she had worked for him for several years.

16. Upon information and belief, Defendant Cordero determined or approved each change to Ms. Duarte's pay rate.

17. Ms. Duarte worked in Don Taco's kitchen. During the hours that the restaurant was open to customers, Ms. Duarte worked preparing ingredients for the various dishes that the restaurant served. After closing time, Ms. Duarte cleaned and organized the kitchen so that it would be ready for use the next day.

18. Ms. Duarte did not hire or supervise anyone at Don Taco.

19. Defendants provided Ms. Duarte with all the materials, tools, and supplies needed for her job.

20. Throughout her employment with Defendants, Ms. Duarte worked five days a week: Tuesday through Saturday.

21. Defendants paid Ms. Duarte her wages every two weeks.

22. Throughout her employment with Defendants, Defendants kept track of Ms. Duarte's hours of work. Ms. Duarte clocked in and out each day by entering a personal code into a Don Taco computer, as Defendants required.

23. From about 2018 to about early 2020, Ms. Duarte typically started working at about 4 PM. Her stopping time varied, but it was typically between 2 and 3 AM. Ms. Duarte worked over 40 hours every week or nearly every week during this time, with the exception of one week in or around 2019 in which she took a vacation. Ms. Duarte estimates that she worked about 52 hours a week on average during this time.

24. Defendants did not give Ms. Duarte any regular breaks, not even for meals.

**Defendants' Deceptive Pay Practices**

25. From 2018 to about early 2020, Ms. Duarte was never or almost never paid at one and one-half times the regular rate at which she was employed for the hours she worked beyond 40 in any workweek, even though Ms. Duarte's typical workweek included about 12 to 15 hours of overtime.

26. From about 2018 to about early January 2019, Defendants falsified Ms. Duarte's wage rate and hours worked using a transparently improper scheme. During this period, the paystubs that Defendants issued to Ms. Duarte claimed that Ms. Duarte was paid at *twice* the hourly wage that she had actually been promised—and that she had worked only *half* the hours she had actually worked.

27. For example, attached to this Complaint as Exhibit A is a copy of the paystub that Defendants issued to Ms. Duarte for the pay period of April 30 to May 13, 2018. The paystub claims that during this two-week period, Ms. Duarte was being paid $27 per hour and that she worked 52.50 total hours over these two weeks—an average of 26.25 hours per week (significantly fewer than 40 hours per week). But in reality, Ms. Duarte's pay rate during this period was only $13.50 per hour (*half* the hourly rate that appears on the paystub), and she worked 105 hours during these two weeks (*twice* the hours that appear on the paystub), averaging 52.5 hours per week—i.e., *more* than 40 hours per week, entitling her to at least 12.5 hours of overtime premiums that she never received.

28. Starting around early January 2019, and continuing until at least February of 2020, Defendants changed from one improper pay scheme to another. During this time, the paystubs that Ms. Duarte received from Defendants claimed that Ms. Duarte was no longer an hourly employee at all, but rather a salaried employee. The paystubs also claimed that during

every two-week pay period, Ms. Duarte worked precisely 80 hours. (See Exhibit B, Paystub April 29 – May 12, 2019).

29. The wages and hours on these "salaried" paystubs from 2019 and early 2020 were false as well. Ms. Duarte's job responsibilities and days of work were the same as in 2018. And as in 2018, Ms. Duarte continued to work well over 40 hours every week or nearly every week (other than one week in 2019 when she took a vacation). Ms. Duarte estimates that her average hours of work during her "salaried" period increased slightly from 2018; she still started at about 4 PM, but her usual stopping time was closer to 3 or 3:30 AM. As in 2018, her exact hours of work varied from week to week, but Ms. Duarte estimates that she typically worked about 55 hours per week on average. But even though Ms. Duarte was working different amounts of overtime from week to week, Defendants paid her the same fixed amount of "salary" nearly every week, regardless of how many hours she had actually worked. This means that, by definition, Defendants were not properly paying her overtime. *See* 29 C.F.R. § 778.500(b).

30. Under the FLSA's recordkeeping provisions, employers must keep accurate payroll records for their non-exempt employees. The records must state the employee's true and accurate rate of pay, hours worked each day, and overtime pay earned each week. *See* 29 C.F.R. Part 516.

31. Upon information and belief, Defendants failed to keep true and accurate records of Ms. Duarte's rate of pay, hours worked each day, and overtime pay earned each week, as required by the FLSA's recordkeeping provisions.

32. Upon information and belief, Defendants intentionally misstated Ms. Duarte's pay rates and hours worked on her paystubs in order to avoid paying her overtime as required by federal law.

33. Upon information and belief, Defendants willfully violated the FLSA by knowingly failing to pay Ms. Duarte according to the overtime provisions of the Act.

## CLAIMS

### Fair Labor Standards Act, 29 U.S.C. §§ 201–219

34. As set forth above, Ms. Duarte was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e)(1) at all times relevant to this action.

35. Defendants were Ms. Duarte's joint "employers" within the meaning of 29 U.S.C. § 203(d) at all times relevant to this action.

36. Defendants jointly "employed" Ms. Duarte within the meaning of 29 U.S.C. § 203(g) at all times relevant to this action.

37. Ms. Duarte was employed by Defendants in an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(b) at all times relevant to this action.

38. From at least 2018 to about early 2020, Defendants failed to pay Ms. Duarte one and one-half times the regular rate at which she was employed for the hours she worked beyond forty in any workweek, as set forth above, thereby violating 29 U.S.C. § 207(a)(1).

39. Defendants' FLSA violations were "willful" within the meaning of 29 U.S.C. § 255(a) in that Defendants made no effort whatsoever to pay Ms. Duarte the proper overtime premium even though her normal work schedule required her to work over 40 hours per week. Indeed, as set forth above, Defendants used two transparently improper payment schemes—one that inflated rates and deflated hours, and one that deflated hours and paid a fixed "salary" even though she performed variable hours of overtime work each week. Both of these schemes appear designed to skirt federal employment laws.

## **REQUESTED RELIEF**

Ms. Duarte respectfully requests that the Court provide the following relief:

1. Declare that the Defendants' violations were "willful," such that a three-year statute of limitations applies under 29 U.S.C. § 255(a);

2. Award Ms. Duarte her actual damages in the amount of all unpaid overtime wages, jointly and severally against both Defendants in an amount to be proved at trial, pursuant to 29 U.S.C. § 216(b);

3. Award Ms. Duarte additional liquidated damages in an amount equal to her actual damages, jointly and severally against both Defendants, pursuant to 29 U.S.C. § 216(b);

4. Award Ms. Duarte her costs and reasonable attorney's fees, jointly and severally against both Defendants, pursuant to 29 U.S.C. § 216(b); and

5. Any other relief the Court deems just and proper.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Simon Sandoval-Moshenberg  Date: April 23, 2021
Simon Sandoval-Moshenberg (VA Bar No. 77110)
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (703) 778-3450
F: (703) 778-3454
E: simon@justice4all.org

*Counsel for Enma Duarte*